UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WAYNE
ANNABEL, II,

              Plaintiff,

v.

JACKSON COUNTY
SHERIFF DEPARTMENT,
*et al.*,

              Defendants.

_____/

Case No. 2:22-cv-12189
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT ACH'S MOTION TO DISMISS (ECF No. 34), GRANT IN PART & DENY IN PART THE JACKSON COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 41), and DENY WITHOUT PREJUDICE PLAINTIFF'S MOTION TO AMEND HIS ORIGINAL COMPLAINT (ECF No. 36)**

**I.    RECOMMENDATION**:  The Court should **GRANT** Defendant ACH's motion to dismiss (ECF No. 34), **GRANT IN PART & DENY IN PART** the Jackson County Defendants' motion for judgment on the pleadings (ECF No. 41), and, pending the Court's decision on these motions, **DENY WITHOUT PREJUDICE** Plaintiff's motion to amend (ECF No. 36).

**II.    REPORT**

    **A.    Introduction**

1

Robert Wayne Annabel, II is currently located at the Michigan Department of Corrections (MDOC) Ionia Correctional Facility (ICF), where he is serving a life sentence imposed on May 15, 2024, for a May 23, 2022 offense.  *See People v. Annabel*, Case No. 2022-704-FC (Jackson County, 4th Circuit Court); ECF No. 41-1 [Register of Actions]; www.michigan.gov/corrections, "Offender Search," last visited June 14, 2024.  Admittedly, he has filed multiple lawsuits while incarcerated.  (ECF No. 1, PageID.2 ¶ 2.)

In September 2022, while located at the MDOC's Macomb Correctional Facility (MRF), Annabel initiated this lawsuit, which stems from his alleged May 23, 2022 arrest – at which time he "was in a six-bedroom house designated for parolees[,]" (ECF No. 45, PageID.402 ¶ 1) – and subsequent alleged events at the Jackson County Jail (JCJ).  (*Id*., ¶¶ 13-23.)  Plaintiff sues the Jackson County Sheriff Department (JCSD), Advanced Correctional Healthcare, Inc. (ACH), Sheriff Gary Schutte, Deputy Ryan Steverson, and three unknown 3rd shift JCJ deputies.  (ECF No. 1, ¶¶ 5-11; *see also* ECF Nos. 21, 32.)

Plaintiff is proceeding *in forma pauperis*, the U.S. Marshal has facilitated service of process, and Defendants JCSD, Schuette, Steverson, and ACH have appeared via counsel.  (ECF Nos. 17, 18, 19, 21, 24, 27, 29, 32.)

**B.    Instant Matters**

Judge Michelson has referred this case to me for pretrial matters.  (ECF No. 20.)  Currently pending before the Court are several motions, including three motions that either challenge Plaintiff's original complaint or seek to amend it:

1.  ACH's December 20, 2023 motion to dismiss (ECF No. 34), as to which Plaintiff has filed a timely response (ECF Nos. 35, 37), and ACH has filed a reply (ECF No. 39);

2.  Plaintiff's January 9, 2024 motion to amend complaint (ECF No. 36), as to which ACH (ECF No. 38) and the Jackson County Defendants (ECF No. 40) have responded; and,

3.  the Jackson County Defendants' motion for judgment on the pleadings (ECF No. 41), as to which a corrected exhibit (ECF No. 44), a timely response (ECF Nos. 42, 45), and a reply (ECF No. 46) have been filed.

Although Plaintiff sought to strike the Jackson County Defendants' reply, the Court denied his request.  (ECF Nos. 52, 54.)  These motions are ready for decision.[1]

## C.    Standards

### 1.    Fed. R. Civ. P. 12(b) ("How to Present Defenses.")

Defendant ACH moves for dismissal pursuant to Fed. Rules Civ. P. 8(a)(2) and 12(b)(6).  (ECF No. 34, PageID.134-135.)  Although the Jackson County Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12(c), they

---

[1] Also pending are Plaintiff's May 2024 motions to compel (ECF Nos. 47, 48), as to which responses (ECF Nos. 50, 53) and a reply (ECF No. 56) have been filed, as well as Plaintiff's June 14, 2024 third motion to compel (ECF No. 59), as to which briefing is not yet closed.  These motions will be addressed under separate cover.

also cite Fed. Rules Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 41, PageID.239-242.)

Thus, the Court begins with Rule 12(b).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

### 2.      Fed. R. Civ. P. 15(a) ("Amendments Before Trial.")

Plaintiff moves to amend his complaint based on Fed. R. Civ. P. 15(a)(2), which provides:  "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  (*Id*.)  (ECF No. 36, PgaeID.150.)  As the Supreme Court has explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir.1993)).  "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose*, 203 F.3d at 421.

## D.   Discussion

### 1.   Plaintiff's motion to amend (ECF No. 36)

In his January 2024 motion (ECF No. 36), Plaintiff seeks to amend his original, September 2023 complaint (ECF No. 1) to identify the John Doe Defendants and make the basis (or elements) of his claims clearer, although he also states "[t]here are no major changes to the facts or claims and relief requested." (ECF No. 36, PageID.153-154.)  The Court has considered the 9-page original

complaint (ECF No. 1, PageID.1-9) and the 9-page proposed amended complaint

(ECF No. 36, PageID.155-163)[3] and notes the following differences:

- In the opening paragraph, the addition of "gross negligence." (*Compare* ECF No. 1, PageID.1; *with*, ECF No. 36, PageID.155.)

- Within the section labeled, "Parties," the addition of Steverson's first name (Ryan), the identification of Sgt. Peraza and Deputy Lewis, and the elimination of one of the unknown deputies. (*Compare* ECF No. 1, ¶¶ 8-11; *with*, ECF No. 36, PageID.156-157 ¶¶ 8-10.)

The Court also notes differences within the "Statement of Facts," such as:

- the addition of "the deputies were not trained to properly deal with mentally ill pretrial detainees[;]"

- the identification of Peraza and Lewis as two of the previously unknown deputies, who, in addition to Steverson, removed Plaintiff from the isolation cell on May 25, 2022;

- the addition of "high traffic area" to the description of the "ordinary cell" to which he was relocated;

- with some rephrasing, adding the allegations that the JCSD, AHC, and Schutte "did not act, neither as did the other defendants, objectively reasonabl[y][,]" and "fail[ed] to properly train subordinates to accommodate the mental health needs of Mr. Annabel and other detainees[;]" and,

---

[3] In each of these filings, there appear to be several duplicate pages. (*Compare* ECF No. 1, PageID.1-9; *with, id.*, PageID.11-19; and, ECF No. 36, PageID.150-163; *with, id.*, 166-179.)  The Court assumes this is the result of the Clerk's Office filing both the original and judge's copies and has endeavored to cite the first set of pages.

- a date change – from July 29, 2022 to August 22, 2022 – for Defendant Steverson's testimony at Annabel's preliminary examination for assault on a jail employee.[4]

(*Compare* ECF No. 1, ¶¶ 16, 17, 18, 21, 23; *with*, ECF No. 36, ¶¶ 15, 16, 17, 20, 22.) Additionally, the proposed amended complaint's "Statement of Facts" adds the following two paragraphs:

- Defendants' policies and customs discriminate against mentally [sic.] illness disabilities but provide medical services and accommodations for lesser disabled detainees. Mr. Annabel was denied reasonable accommodations for his mental health disabilities.

- These allegations are a custom against all mentally ill detainees at Jackson County Jail.

(ECF No. 36, PageID.160 ¶¶ 23-24.)

The foregoing comparison confirms that Plaintiff makes "no major changes to the facts or claims and relief requested[,]" or, put another way, "does not add new claims or change the relief sought." (ECF No. 36, PageID.153-154.) Given the similarities between the original and proposed amended complaints, the Court will first address the pending motions to dismiss. Once the Court rules on these

---

[4] This appears to be a reference to *State of Michigan v. Annabel*, Case No. 2022-795-FH (Jackson County, 4th Circuit Court) (August 24, 2022 preliminary examination) (*see* ECF No. 41-2, PageID.304-305 [Register of Actions]), although, around the same time, there was a probable cause hearing in *State of Michigan v. Annabel*, Case No. 2022-704-FY (Jackson County) (August 22, 2022 probable cause hearing) (*see* ECF No. 45, PageID.405-449 [Transcript]; ECF No. 41-1, PageID.282-283 [Register of Actions]).

dispositive motions, then, if necessary, Plaintiff nay renew his request to amend under Fed. R. Civ. P. 15(a), and Defendants may renew their responsive arguments, including futility (ECF Nos. 38, 40), assuming the asserted bases are still applicable.[5]

### 2.    ACH's motion to dismiss (ECF No. 34)

### a.    Allegations against ACH

In both his original and proposed amended complaints, Plaintiff identifies ACH as "employed by contract at [JCJ] . . . [,]" and alleges, albeit with some minor rephrasing, that all Defendants violated his Fourteenth Amendment rights by deliberate indifference to his mental illness treatment, Defendant ACH and others violated his Fourteenth Amendment equal protection rights and ADA rights, and all Defendants violated Michigan tort law.  (ECF No. 1, PageID.7 ¶¶ 24-26; *see also* ECF No. 36, PageID.161 ¶¶ 24-26.)  However, it seems the only factual allegation that specifically mentions ACH is the following, single paragraph:

> Defendants [JCSD], [ACH], and Sheriff Gary Schutte are responsible for policies and customs of deliberate indifference towards Mr. Annabel's mental health treatment needs and *failure to train subordinates*.  The jail has no employed psychiatrist or psychologist, and for over 72 hours Mr. Annabel was denied psychotropic

---

[5] Contrary to Plaintiff's claim within his motion to amend that "[n]one of the defendants have yet filed a dispositive motion in response to the original complaint[,]" (*id*., PageID.153), Defendant AHC filed its motion to dismiss on December 20, 2023 (ECF No. 34), *fourteen days before* Plaintiff placed his motion to amend in the mail on January 3, 2024 (ECF No. 36, PageID.180, 182).  Perhaps these filings crossed each other in the mail.

medication, because there is *no procedure or screening process for providing any mental health services to detainees*. . . . .

(ECF No. 1, ¶ 21 (emphases added).)  Although there is some rephrasing in the proposed amended complaint, such as adding that Defendant AHC and others "did not act . . . objectively reasonabl[y][,]" and/or "fail[ed] to properly train subordinates to accommodate the mental health needs of Mr. Annabel and other detainees[,]" (ECF No. 36, PageID.159-160 ¶ 20), these paragraphs are largely similar.  (*See also* ECF No. 38, PageID.204-205 ¶¶ 2, 3.)

> **b.**    ***Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)**

ACH argues that Plaintiff "fails to state a valid *Monell* claim" against it. (ECF No. 34, PageID.138.)  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  "A local government may not be sued under 1983 for injuries caused solely by its agents under the theory of respondeat superior, unless those persons are executing the government's policies or customs."  *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982) (citing *Monell*, 436 U.S. at 691, 695).

"In addition to showing that [ACH] as an entity 'caused' the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, [he] must "'show that the particular injury was

incurred *because* of the execution of that policy.'"  *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) (quoting *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993) (emphasis added) (citation omitted)).  In other words, "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

ACH interprets Paragraph 21 of Plaintiff's complaint as "vaguely attempt[ing] to identify two alleged policies of Defendant ACH which were the driving force of his injury," namely that Defendant ACH "failed to 'train it[s] subordinates[,]'" and "lacked a policy or procedure for completing mental health screenings."  (ECF No. 34, PageID.139-140; *see also* ECF No. 39, PageID.216.)

### i.    Failure to train its subordinates

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

As to Defendant ACH, the Court need not address these elements, because, as Defendant ACH correctly points out, "Plaintiff's Complaint makes no mention of any medical staff or their actions from which to assess the adequacy of their training." (ECF No. 34, PageID.140.)  At best, the pleading alleges non-party Steward contacted non-party "Lifeways, Inc.," which prescribed medication. (ECF No. 1, ¶ 22; see also ECF No. 36, PageID.160 ¶ 21.)  Instead, "Plaintiff's Complaint focuses solely on the actions of corrections officers who are not agents or employees of Defendant ACH." (*Id.*)

In his response, Plaintiff contends the risk to him was obvious.  He notes that a municipality's "'deliberate indifference' may arise by . . . failing to respond to a single constitutional violation such that the *training*'s inadequacy was 'so obvious, and ... so likely to result in the violation[.]'" *Harris v. City of Saginaw, Michigan*, 62 F.4th 1028, 1038 (6th Cir. 2023) (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (citations omitted) (emphasis added)). (ECF No. 37, PageID.194.)  He also contends that, "without discovery," he has not "been able to identify the [ACH] employees involved[,]" elsewhere contending that AHC "should be required, in discovery, to identify its own employees." (*Id.*, PageID.195, 198.)  Plaintiff contends that "[i]t is not critical to [his] claims that he has not yet, without discovery, been able to identify the [ACH] employees involved[,]" as the risk to him was obvious. (ECF No. 37, PageID.195) (citing

*Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("Because . . . prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety.")).

Plaintiff also seems to be playing the odds in his response.  He contends: (1) it is "plausible that jail officials had reported Plaintiff's mental health condition to one or more of [ACH's] poorly trained employees[,]" (ECF No. 37, PageID.195), (2) that ACH "does not get off the hook so easily by blaming solely Jackson County defendants without evidence that [ACH] and its own employees did not know and have information of an obvious mental health need of Plaintiff or other detainees[,]" (ECF No. 37, PageID.195-196); and, (3) that "[i]t is highly unlikely that [ACH] employees did not know about Plaintiff's crisis and that [ACH] did not know that mentally ill persons tend to be involved in the criminal justice system when it trained it[s] employees . . . [,]" (*id*., PageID.196-197).  This line of reasoning is highly speculative.

As Defendant ACH points out in addressing the issue of discovery, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679. (ECF No. 39, PageID.217.)  On this point, it is worth noting that, generally, "a

plaintiff is . . . not entitled to discovery before a motion to dismiss has been decided, and allowing such discovery undermines the purpose of Federal Rule of Civil Procedure 12(b)(6), which is 'to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" *Greve v. Bass*, No. 3:16-CV-372, 2017 WL 387203, at *2 (M.D. Tenn. Jan. 27, 2017) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)). Moreover, although Plaintiff seeks evidence that Defendant ACH's "own employees did not know and have information of an obvious mental health need of Plaintiff[,]" the Court agrees with ACH that it is not required to "'prove a negative . . . on an issue that the plaintiff must prove at trial[;]'" rather, it need only "'point to an absence of proof on plaintiff's part . . . .'" (*Id.*, PageID.219.) *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 241 (5th Cir. 2008) (quoting *Parker v. Sony Pictures Entm't,* 260 F.3d 100, 111 (2d Cir. 2001)).

As noted above, facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. (ECF No. 39, PageID.220.) Plaintiff's complaint, which "[a]t no point . . . discuss[es] any of the ACH medical staff's actions," (ECF No. 39, PageID.219), does not meet this standard as to any subordinate of ACH.

### ii.   Policy (procedure or process) & custom (pattern or practice)

Although Plaintiff alleges that ACH and others "are responsible for policies and customs of deliberate indifference towards Mr. Annabel's mental health treatment needs . . . [,]" he also alleges that "there is no procedure or screening process for providing any mental health services to detainees."  (ECF No. 1, ¶ 21.) Therefore, it seems that instead of arguing ACH had a "specific formal written policy not to provide pre-trial detainees with mental health screenings[,]" or "an unconstitutional policy of not addressing a detainee's mental health issues[,]" Plaintiff's *Monell* claim is based on a pattern or practice of "allegedly unconstitutional conduct . . . [,]" (ECF No. 34, PageID.140-141), *i.e.*, "a custom of tolerance or acquiescence of federal rights violations."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

### (1)   Single occasion

"[P]laintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Thomas*, 398 F.3d at 433 (referencing *Doe*, 103 F.3d at 508).  Albeit on a motion for summary judgment, the Sixth Circuit noted that "[a]ppellants' expert did not reach beyond the facts of this case to show any possibility of a pattern." *Thomas*, 398 F.3d at 434.  *See also Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) ("But Winkler discusses only Hacker's treatment, and therefore cannot

establish that the County had a custom of deliberate indifference to the serious

healthcare needs of all the inmates incarcerated at the Detention Center."); *Stewart*

*v. City of Memphis, Tennessee*, 788 F. App'x 341, 347 (6th Cir. 2019) ("Arguing

that 'one instance of potential misconduct' is evidence of a clear and persistent

pattern is a 'path to municipal liability [that] has been forbidden by the Supreme

Court.'") (quoting *Thomas*, 398 F.3d at 432-433 (citations omitted)).  (ECF No. 34,

PageID.141.)

Here, Defendant ACH aptly notes that "the entirety of Plaintiff's factual

allegations focuses on his interactions with correctional officers on a *single*

occasion."  (ECF No. 34, PageID.141 (emphasis added).)  Notwithstanding the

allegations that "there was no mental illness screening process" and that JCJ "has

no employed psychiatrist or psychologist," (ECF No. 1, ¶¶ 16, 21), the alleged

setting is the JCJ (ECF No. 1, ¶ 3), the Defendants are JCSD, AHC, the sheriff, and

multiple deputies (*id*., ¶¶ 5-11), Plaintiff does not mention a particular AHC

employee (*id*., ¶¶ 16-21), and the time period at issue seems to be a 72-hour period

(*id*., ¶ 22).  As Defendant ACH notes, Plaintiff's pleading does not discuss "any

actions of any ACH medical staff" or "other [specific] incidents of pre-trial

detainee's [sic] being denied a mental health screening[,]" and it "does not allege

the corrections officers referred him for a mental health evaluation and [that] he

did not receive one."  (ECF No. 34, PageID.141-142.)  (*See also* ECF No. 36,

PageID.156-160 ¶¶ 3, 5-10, 15-24.)  And, bearing in mind Plaintiff's concurrently-pending motion to amend, ACH's observation that Plaintiff does not "discuss other incidents" of pretrial detainees "being denied a mental health screening[,]" (ECF No. 34, PageID.141), is not cured by Plaintiff's proposed addition of the words "and other detainees" to a particular paragraph (*compare* ECF No. 1, ¶ 21; *with*, ECF No. 36, PageID.159-160 ¶ 20) or by Plaintiff's proposed addition of a paragraph stating his allegations are "a custom against all mentally ill detainees at [JCJ]" to his proposed amended pleading (*see* ECF No. 36, PageID.160 ¶ 24), because these proposed additions are too generic.  Thus, Defendant ACH convincingly argues that, at best, the complaint alleges that Plaintiff, "on a single occasion, did not receive a mental health screening."  (*Id.*)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555 (internal and external citations omitted).  (ECF No. 34, PageID.142; ECF No. 39, PageID.217.)  In sum, as ACH reasonably observes, "mere threadbare labels and conclusions that Defendant ACH violated Plaintiff's rights, based on a recitation of the actions of correction officers not in the employ of ACH, is all Plaintiff offers[,]" and that Plaintiff's pleading does not "set forth

facts demonstrating Defendant ACH had a specific unconstitutional policy, practice or custom that was the driving force behind his injury." (ECF No. 34, PageID.142.) Ultimately, Plaintiff is "the master of his complaint," and thus, the Court looks to the four corners of his pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005).

### (2)    Acting in concert

In his response, Plaintiff argues that, from his complaint, "it is more than plausible that [ACH] was acting in concert with Jackson County defendants as the sole healthcare provider at [JCJ] for the detainees, including Plaintiff." (ECF No. 37, PageID.194; *see also id*., PageID.193, 196.) Further, he contends that his complaint "sufficiently describes the policy and customs at the [JCJ] showing indifference to his mental health need." (ECF No. 37, PageID.196.) Notably, Plaintiff mentions ACH's "mysteriously cloaked contract[,]" (ECF No. 37, PageID.193), contends that ACH "conceals its contractual responsibilities at the [JCJ], hotly disputing that Plaintiff should not have any discovery whatsoever of the contract, policies, customs, or employee identities[,]" (*id*.), asserts that "the paragraphs of the complaint [should not] be read in isolation[,]" invites ACH "to expose its contract and policies, and the identity of its under-cover employees during discovery[,]" and argues that how much ACH "acted in concert" with the

Jackson County Defendants "is a question of fact not suitable under Rule 12(b)(6) . . . [,]" (*id.*, PageID.196).

However, it is worth noting again that "a plaintiff is generally not entitled to discovery before a motion to dismiss has been decided[.]" *Greve*, 2017 WL 387203, at *2. Also, in its reply, ACH addresses Plaintiff's assertion(s) that ACH was "acting in concert" with the Jackson County Defendants. (ECF No. 39, PageID.215-217.) For one thing, "Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). (ECF No. 39, PageID.216.) Although Plaintiff names ACH as a Defendant, the individual Defendants in Plaintiff's case are *not* ACH employees; nor does his complaint mention actions by a particular ACH employee. And, notwithstanding Plaintiff's contention that "[t]here is little doubt that at least some of the jail officials had brought his mental health condition to the attention of unknown [ACH] employees[,]" (ECF No. 37, PageID.194), the pleading does not allege that "any of the officers discussed had any contact with any ACH employee." (ECF No. 39, PageID.218.) The same can be said for Plaintiff's assertion that ACH's employees "refused to respond[,]" allegedly resulting in a 72-hour delay in treatment. (ECF No. 37, PageID.194.) Moreover, Plaintiff's assertion that ACH's employes "were not psychiatrists or psychologists," (ECF

No. 37, PageID.194), does not aid his cause.  In the end, Defendant ACH simply

cannot be held liable on a theory of *respondeat superior*.  *Dunn v. State of Tenn.*,

697 F.2d 121, 128 (6th Cir. 1982) (citing *Monell*, 436 U.S. at 691, 695).  (ECF No.

39, PageID.218.)

### c.    Public entity (42 U.S.C. § 12131)

The Americans With Disabilities Act (ADA) is codified at 42 U.S.C. §§

12101-12213.  The public services subchapter defines "public entity" as:  "(A) any

State or local government; (B) any department, agency, special purpose district, or

other instrumentality of a State or States or local government; and (C) the National

Railroad Passenger Corporation, and any commuter authority (as defined in section

24102(4) of Title 49)."  42 U.S.C.A. § 12131(1).  However, Defendant ACH "is

not a public entity as defined under 42 U.S.C. § 12131 and therefore cannot be

held liable under the [ADA]."  (ECF No. 34, PageID.142-144.)  "A private

contractor does not become a 'public entity' under Title II merely be contracting

with a governmental entity to provide governmental services."  *Cox v. Jackson*,

579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (Rosen, J., *adopting report and

recommendation of* Komives, M.J.).  Accordingly, "the Court should conclude that

defendant [ACH] is entitled to [dismissal] with respect to plaintiff's ADA claims."

*Cox*, 579 F. Supp. 2d at 852-853.

Plaintiff argues that "a private corporation acting in concert with a municipal government [can] also be held liable under § 1983 for constitutional violations[.]" (ECF No. 37, PageID.197-198.)  To the extent this was a response to Defendant ACH's "public entity" argument, it appears Plaintiff has misconstrued it; Defendant ACH's second argument concerned the ADA, not § 1983.  (*See* ECF No. 39, PageID.220.)  To the extent Plaintiff states that ACH faults him for "failing to identify which of its employees had been involved in the unconstitutional violation[,]" (ECF No. 37, PageID.198), Plaintiff seems to be responding to ACH's first, *Monell* argument – that the complaint "focuses solely on the actions of corrections officers who are not agents or employees of Defendant ACH[,]" (ECF No. 34, PageID.140, 142) – which was addressed above.

### d.    ADA (42 U.S.C. § 12132)

Finally, Defendant ACH argues that Plaintiff's complaint "fails to state a valid [ADA] claim[.]"  (ECF No. 34, PageID.145-147.)  Although Plaintiff believes that ACH "misstate[s] the elements of Plaintiff's ADA claim[,]" (ECF No. 37, PageID.198-200), and Defendant ACH replies accordingly (ECF No. 39, PageID.220-221), it is unnecessary to address whether Plaintiff has stated a valid ADA claim against ACH, because, as discussed above, ACH is not a "public entity" capable of being held liable under the ADA.

### 3.    The Jackson County Defendants (*i.e.*, JCSD, Schutte, Steverson [perhaps also Peraza & Lewis]) motion for judgment on the pleadings (ECF No. 41)

### a.    Allegations against the Jackson County Defendants

Plaintiff mentions JCSD, Schutte, Steverson, and unknown deputies (later identified as Peraza and Lewis) in the pleading's statement of facts.  (ECF No. 1, ¶¶ 17-23; *see also* ECF No. 36, PageID.158-160 ¶¶ 16-24.)  Plaintiff alleges all Defendants violated his Fourteenth Amendment rights by deliberate indifference to his mental illness treatment, certain Defendants violated his Fourteenth Amendment equal protection rights and ADA rights, and all Defendants violated Michigan tort law.  (ECF No. 1, PageID.7 ¶¶ 24-26; *see also* ECF No. 36, PageID.161 ¶¶ 24-26.)

On January 29, 2024, Defendants JCSD, Schuette, and Steverson ("the Jackson County Defendants") filed a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, providing four distinct arguments.  (ECF No. 41.)  However, the Undersigned notes that, by the time these Defendants filed their motion, Plaintiff had moved to amend his complaint, in part to identify Peraza and Lewis as the originally unidentified Defendants who, on May 24, 2022, along with Steverson, "removed Mr. Annabel from the isolation cell for an unnecessary cell cleaning." (*Compare* ECF No. 1, ¶ 17; *with*, ECF No. 36, PageID.158 ¶ 16.)  Thus, in addition to Deputy Steverson's affidavit (ECF No. 41-6, ECF No. 44), the record

of this case contains Sgt. Pedro Peraza's affidavit (ECF No. 41-4), each of which attaches a May 25, 2022 Jail Incident Report.  As a result, this report's use of "Jackson County Defendants" may refer to more than the movants.

### b.   Abstention

First, the Jackson County Defendants argue that "The *Younger* abstention doctrine bars this Court from exercising its jurisdiction over Plaintiff's claims because of Plaintiff's ongoing state court criminal prosecution."  (ECF No. 41, PageID.242-243; ECF No. 46, PageID.460-461.)  *See Younger v. Harris*, 401 U.S. 37 (1971).  Plaintiff responds that "Defendants' attorney could not have possibly raised a more facially frivolous issue that is also conclusory and totally devoid of any factual support[,]" gives three reasons why, and urges the Court to award sanctions.  (ECF No. 45, PageID.386-387.)

As the Sixth Circuit has observed, the Court "may abstain under *Younger* 'when there is an ongoing state criminal prosecution.'"  *Aaron v. O'Connor*, 914 F.3d 1010, 1016 (6th Cir. 2019) (quoting *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017)).  Defendants base their abstention argument on *People v. Annabel*, Case No. 2022-795-FH (Jackson County, 4th Circuit Court) (assault of prison employee), which was pending at the time Defendants filed their January 2024 dispositive motion and their March 2024 reply.  (ECF No. 41, PageID.243; ECF No. 41-2 [Register of Actions].)  However, on May 15, 2024, at least two

things occurred:  (1) Plaintiff's sentence was imposed *People v. Annabel*, Case No. 2022-704-FC (Jackson County, 4th Circuit Court) (the underlying criminal matter); and, (2) the assault case , Case No. 2022-795-FH (Jackson County, 4th Circuit Court), was dismissed "*nolle prosequi*."  Accordingly, the instant lawsuit should not be dismissed for "lack of subject-matter jurisdiction[,]" Fed. R. Civ. P. 12(b)(1), on the basis that the assault case is "still pending in the Jackson County Court[,]" (ECF No. 41, PageID.243).  Likewise, due to the timing issues just explained, sanctions are unwarranted.

### b.    Exhaustion[6]

Second, the Jackson County Defendants argue that Plaintiff "has failed to exhaust his administrative remedies prior to filing suit as required under PLRA."

---

[6] An unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA. *See* 42 U.S.C. § 1997e(a). To the extent evidence in the record permits, the appropriate device is a motion for summary judgment under Rule 56. If summary judgment is not appropriate, the district judge may decide disputed questions of fact in a preliminary proceeding. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). "The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016) (Lawson, J., *adopting in part report and recommendation of* Whalen, M.J.). Additionally, "[a] motion for summary judgment on the exhaustion issue necessarily addresses the merits of an affirmative defense." *Anderson*, 175 F. Supp. 3d at 788 (favorably referring to *Albino*). Accordingly, notwithstanding how it was titled, this portion of the Jackson Defendants' motion will be considered under the summary judgment standard.

(ECF No. 41, PageID.243-246.)  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies") (emphasis added).

### i.      Availability at JCJ

Focusing on whether the JCJ's grievance procedure was "available" to Plaintiff, Defendants point to:

- the affidavit of Lieutenant Mike Coburn, who attests Plaintiff "was provided a copy of the Wesley Inmate Guide at the time of his booking," (ECF No. 41-5, PageID.321 ¶ 6), and attaches a three-page *Jackson County Sheriff Inmate Guidebook*, which includes a paragraph labeled, "Grievance Procedure[,]" (*id.*, PageID.323-325);

- Plaintiff's December 2023 discovery responses, wherein Plaintiff explained, "[a]t all times relevant to Plaintiff's confinement to [JCJ] in 2022, he was on suicide watch and not allowed paper or an ink pen, plus he was told that the Jail does not have a grievance process.  There w[ere] no 'available' remedies for him to exhaust[,]" (ECF No. 41-7, PageID.329 ¶ 1); and,

- another discovery response, as to which – when asked about kites, grievances, or any written complaints he filed against the JCJ – Plaintiff answered, in part, "I have never filed any of these documents in [JCJ]." (ECF No. 41-7, PageID.337 ¶ 7.)

(ECF No. 41, PageID.245.)  Furthermore, the Court notes Coburn's attestation that Plaintiff "failed to file any grievance of any type regarding the events and claims

underlying this lawsuit against Defendants Sheriff Schuette, Deputy Steverson, myself, or otherwise."  (ECF No. 41-5 ¶ 7.)

After challenging the veracity of Coburn's affidavit (*see id.*, PageID.388-390), Plaintiff contends "Defendants were also well aware that Plaintiff was suffering from severe mental health disabilities that required suicide watch restrictions[,]" (*id.*, PageID.390), and he declares:

- I remained on suicide watch for my entire four-day stay at the jail.  At no time did I have possession of a guidebook, other paper, or writing utensils.

- On the second day in Jail, I twice asked Jail officers whether there was a grievance process, and I was told there was not one.

(*Id.*, PageID.403 ¶¶ 5, 6.)  Plaintiff argues that Coburn's "perjured affidavit" and Plaintiff's own declaration create "a genuine issue of material fact whether Plaintiff received some sort of guidebook and knew that the Jail had a grievance process, and that he knew how to use it, and that he had an opportunity to actually use it, but freely chose not to utilize it."  (ECF No. 45, PageID.391.)

Thus, there are competing sworn statements on the issue of whether JCJ's administrative grievance procedure was available to Plaintiff in the days following his May 23, 2022 arrest.  Although Defendants cite to Plaintiff's response brief as not meeting the plausibility requirement (*see* ECF No. 45, PageID.388) and accurately represent that Plaintiff has not identified the two officers to whom he inquired about a grievance process at JCJ (*see* ECF No. 46, PageID.462),

Plaintiff's sworn statement does provide a date for the inquiry, namely "the second day in Jail," (*see* ECF No. 45, PageID.403 ¶ 6), *i.e.*, likely May 24, 2022.  The Jackson County Defendants contend they "did not receive notice of Plaintiff's alleged grievances regarding his May 2022 incarceration until September 15, 2022," the date Plaintiff initiated this lawsuit.  (ECF No. 46, PageID.462.)  However, even if Plaintiff alleges he has filed multiple lawsuits (*see* ECF No. 1, ¶ 2; *see also* ECF No. 36, PageID.156 ¶ 2), it is *not* reasonable here simply "to infer that Plaintiff had the opportunity to file a grievance 'but freely chose not to utilize it.'"  (ECF No. 46, PageID.463.)  Plaintiff's declaration, which the Court must assume to be true, calls into question whether he had access to the grievance process at JCJ.  As such, Plaintiff's claims against the individual Jackson County Defendants should proceed.

### ii.    Availability after transfer from JCJ to MDOC (MRF)

Defendants contend that, "[a]fter 3 days in the [JCJ], Plaintiff was transferred to MDOC [MRF] for his alleged parole violation . . . ."  (ECF No. 41, PageID.237.)  According to Plaintiff, Captain Stewart arranged a hearing with Judge McBain "to make special arrangements to transfer Plaintiff to MDOC custody so he could finally get adequate mental health treatment."  (ECF No. 45, PageID.396.)  This appears to be a reference to the events of May 27, 2022, at which time it appears Judge Michael J. Klaeren set a $10,000 bond in *State v.*

*Annabel*, 2022-2200704FY-FY (Jackson County, 12th District Court) (ECF No. 45, PageID.396-397) and Plaintiff appears to have been seen by Daryl Parker, M.D., presumably of ACH (*id*., PageID.451-452).

To the extent Plaintiff contends "the grievance procedure was never 'available' to him after he was imprisoned in a different, private facility[,]" Defendants claim that Plaintiff "presented no evidence to the district court to support this [unavailability] contention." (ECF No. 41, PageID.245.) "Generally, '[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for purposes of exhaustion.'" *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (quoting *Blakey v. Beckstrom,* No. 06–163–HRW, 2007 WL 204005, at *2 (E.D. Ky. Jan. 24, 2007)). Defendants contend that, "[n]otwithstanding Plaintiff's transfer from Jackson County Jail to MDOC, Plaintiff still had the opportunity to file a grievance, kite, or any sort of complaint regarding the May 2022 incident and chose instead to file a federal lawsuit 3 months later." (ECF No. 41, PageID.246.) (*See also* ECF No. 46, PageID.462-463.)

However, the Court does not construe Plaintiff's unavailability assertions in his discovery responses as limited to the days *after* he was transferred from JCJ, because Plaintiff's answers to the relevant Request for Admission and relevant Interrogatory (ECF No. 41-7, PageID.329 ¶ 1, 337 ¶ 7) each mention the JCJ.

### iii.    Summation

In his response, arguing that Defendants "failed to carry their burden of proof . . . [,]" Plaintiff seems to acknowledge that "an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the defendants have the burden to plead and prove by a preponderance of the evidence . . . ." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022).  (ECF No. 45, PageID.387.)  Defendants attempt to distinguish *Lamb*, pointing to the Sixth Circuit's consideration of "whether Lamb made sufficient affirmative efforts to comply with step one of Ohio's grievance process," *Lamb*, 52 F.4th at 295, and asserting that Plaintiff Annabel "made absolutely zero affirmative efforts to notify these Defendants of any alleged complaint, let alone file any type of grievance or comply with JCJ's grievance process."  (ECF No. 46, PageID.461.)

However, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  As discussed above, there are competing sworn statements on the issue of whether JCJ's administrative grievance procedure was available to Plaintiff in the days following his May 23, 2022 arrest.  As a result, Plaintiff's claims against the individual county Defendants should proceed.

###### c.   The individual Jackson County Defendants are not entitled to qualified immunity.

Third, the Jackson County Defendants argue that "[a]ny individual capacity claims asserted against the individual Defendants are barred by qualified immunity." (ECF No. 41, PageID.246-248.) Plaintiff disagrees. (ECF No. 45, PageID.393-398.) "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Entitlement to qualified immunity involves a two-part inquiry, namely "whether a constitutional right would have been violated on the facts alleged[,]" and, "whether the right was clearly established . . . [,]" which "must be considered on a more specific level than recognized by the Court of Appeals." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

The Jackson County Defendants argue that Plaintiff's Complaint not only "fails to plead factual allegations supporting any 42 U.S.C. § 1983 (hereafter "§ 1983") claims against Defendants," but also "fails to outline any traditional theories of liability where Defendants' alleged conduct would plausibly give rise anywhere near the level of a constitutional violation, let alone a violation of any clearly established right." (ECF No. 41, PageID.248.) However, Defendants' contention that Plaintiff has failed "to articulate a coherent, viable claim in his

Complaint warrants dismissal[,]" (*id*.), is akin to a Fed. R. Civ. P. 12(b)(6)

argument; in other words, Defendants' qualified immunity argument is a masked

motion to dismiss for "failure to state a claim upon which relief can be granted[.]"

(*Id*.)  Moreover, because the Jackson County Defendants' previous two arguments

– *Younger* abstention and exhaustion of administrative remedies – do not address

the viability of Plaintiff's underlying Fourteenth Amendment claims against the

individual county Defendants (ECF No. 1, ¶¶ 24, 25; *see also* ECF No. 36,

PageID.161 ¶¶ 24, 25), and because the county Defendants' substantive argument

on this issue is so undeveloped and conclusory (*i.e.*, substantively arguing the *non-*

*sequitur* that because Plaintiff's claims fail under the *Younger* abstention doctrine

and he failed to exhaust his administrative remedies "there is little disputing that

qualified immunity would *also* apply to any of his claims[,]" (*see* ECF No. 41,

PageID.248 (emphasis added)), these Defendants have not shown their entitlement

to qualified immunity as to the claims against them.  Indeed, the verified pleading

alleges "Captain Stewart acknowledged to the 12th District Court that the jail had

no manner to accommodate Mr. Annabel for his mental illness disabilities," and

"Steverson testified at Mr. Annabel's preliminary examination [in the assault case,

Case No. 2022-795-FH (Jackson County, 4th Circuit Court)] that Defendant had

receive no training for properly managing mentally ill detainees[.]"  (ECF No. 1,

¶¶ 22, 23; *see also* ECF No. 36, PageID.160 ¶¶ 21, 22.)

### d.     JCSD is not a legal entity capable of being sued.

Finally, the Jackson County Defendants argue that JCSD "is not a legal entity capable of being sued."  (ECF No. 41, PageID.249-250; ECF No. 46, PageID.463-464.)  Whereas JCSD is not an individual or a corporation, "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."  Fed. R. Civ. P. 17(b)(3).  In other words, "[w]hether a governmental body has a separate legal existence allowing it to be sued in its own name generally turns on the law of the state that established the body."  *Lopez v. Foerster*, No. 20-2258, 2022 WL 910575, at *6 (6th Cir. Mar. 29, 2022).  In fact, "[i]t is well settled in Michigan that a police department is not a legal entity capable of being sued in a 42 U.S.C. § 1983 action."  *May-Shaw v. City of Grand Rapids*, No. 1:19-CV-117, 2019 WL 2265076, at *3 (W.D. Mich. May 28, 2019).  *See also Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) ("under Michigan law, Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit.").

In response, Plaintiff argues that "Jackson County and its departments are municipal entities that can be sued[,]" acknowledges that JCSD "is a department of Jackson County municipal government[,]" and purports that suing JCSD "is, in all but name, a suit against the Jackson County municipality."  (ECF No. 45,

PageID.392.)  As Plaintiff sees it, "Defendant is quibbling over Plaintiff's choice of name calling."  (*Id.*)  Nonetheless, the fact remains that Plaintiff's original complaint and Plaintiff's proposed amended complaint clearly name JCSD as a Defendant.  (*See* ECF No. 1, ¶ 5; ECF No. 36, PageID.156 ¶ 5.)  Accordingly, as pleaded, JCSD is entitled to dismissal of Plaintiff's claims against it.

### E.    Conclusion

For the reasons explained above, the Court should:  **(1) GRANT** ACH's motion to dismiss (ECF No. 34) (*see* Section D.2); **(2) GRANT IN PART & DENY IN PART** the Jackson County Defendants' motion for judgment on the pleadings (ECF No. 41), with only Plaintiff's claims against the individual Jackson County Defendants proceeding (*see* Section D.3); and, **(3)** pending the Court's decisions on these motions, **DENY WITHOUT PREJUDICE** Plaintiff's pending motion to amend (ECF No. 36) (*see* Section D.1).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  June 26, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE